Your Honor, my name is Kevin Merch. This is Mrs. Merch, and I represent myself, Mrs. Merch, and the Merch Law Firm. This case involves an order, and the case has been settled, but there's an order in the case that says that we did something wrong, horribly wrong, and what it is is they state that we gave or we received certain documents that were attorney-client documents from a disbarred lawyer that worked for the company, a company we never represented, but he also worked for a company we did represent in this case. It's very confusing, but that's kind of the gist of it. This doesn't involve just one case. We have cases now across the country, and this is an attempt, we believe, to try to get us to have to remove ourselves from cases. We removed ourselves from ABARI because of this, and we notify every single person of this order. We don't know, in the order, specifically what they think was a document that was confidential. What they did is, there was a complaint filed. First, there was a complaint. The first complaint in our group of cases was on 421-17, or excuse me, it was 129-18. Before we get to the merits, could you address the standing issue? Yes, I can. Did the district court's order in this case do enough to meet the requirements for the Merge law firm to have standing? If I may, in our brief at page 4, we address it, and it states, despite the settlement of the underlying case, the appeal of the disqualification order is not moot because the counsel, Peters and Friedman, to further sanctions by the bar and protests adverse effects upon counsel's careers and public image. We've been fired from cases that involve the same people. So we do have standing. We do believe, or else we, it would be, there was no hearing on this case, none. There was no order that came up. We believe we have standing because we have no due process, nothing. It's just like, you lose, and then they take that order to every case we file, and they say, well, this federal judge in California says you lose. I asked for a hearing on everything he did. He never gave me one hearing. Well, why isn't that an issue in those cases, as opposed to an overall issue to be decided here? The decision in this case was that you shouldn't represent that client in that litigation, and that's the decision. And at this point, the client's even abandoned the case, the underlying case that you were disqualified in. So why isn't, I understand your position with regard to, well, it's an attack on our reputation, and it affects how other judges may look at those circumstances. But aren't those circumstances, they are on their own facts, aren't they, as to whether or not you should be disqualified in those other related cases? No. Okay. And why is that? You turned me into the bar. I'm sorry, say that again? You turned me into the State Bar of California. Okay. And what was the consequence of that? We're waiting. Okay. So not only, and he tells everybody this, the same thing in the other cases. So it has adversely affected the Abari case, this case. We had to recuse ourselves from this case because of the order. No hearing. No hearing. No depositions. This guy named Michael Nauclea that just goes out and steals money. He sold $1.7 million. But that's your client's claim. That's not your claim. I got one third of it. Well, but the question is, for that claim, the client would appeal, and the client would say they're being prejudiced. Because they settled. But if the client settled, you can't blend that in the opposition. That's a decision made by your client. If I may explain, what happens is, what they do, and it's kind of an old trick. I'm an old guy. I've been around a long time. 65 years old. So years ago, there used to be this thing where you would go get a bad order, quickly get an attorney's fees, then go to the client and say, we'll settle and walk away from attorney's fees. That's exactly what they did in this case. They say they abandoned it. No. They went to Zia Abari and settled with him not to take the attorney fees. That's what they did. They did it while I was still counsel. But we can't give you any relief with regard to that. Relief, I understand that. But if you look at the entire record, and I'll get an affidavit, and I'll supplement the record. I know it's late to do that. I completely understand. I've been here. I've even been in this room several times. The point is, you cannot use this technique to disqualify a lawyer that does nothing wrong. Well, counsel, let me ask you this. To the extent that there are conflicting declarations and representations in the record, the district court made certain findings. Whether those findings go towards whether confidential communications were actually transmitted or findings with regard to your failure to overcome the presumption. Here, at the appellate level, we review that differentially. So what do we do with that to the extent the district court made certain findings? Well, you can certainly go to and look at the fact that there was no hearing on this. And you can say that under, I have a right of due process, even in a civil case, I have due process and a right to cross-examine Mr. Noclia. And to say, because all he brought forward were his. We brought forward Mr. Zia, who said that Mr. Reiner had never been acted as an attorney for him. Reiner admitted he was a disbarred attorney. He got into a fight with Noclia. They were in a big fight. Because what had happened, and the facts are important, it was $1.7 million paid. All right. So I just want to make sure I understand your positions. You're not asking us to resolve the factual disputes, right? Because when you're reading your briefs, you're contesting the factual accuracy of some of the district court's findings. You're not asking us to revisit those factual findings. You're asking us to find a due process violation and send it back. Is that right? That would be one of the remedies I would ask for. Send it back for a hearing. And if we don't find that there was a due process violation based on the failure to file a hearing, then do you lose? I don't know. Because you say, do I lose? I don't know what my options are at that point. I'd have to sit there and say, you know, is there going to be a bar hearing? I'd go to a bar hearing. I would subpoena him in. He wouldn't show up because he doesn't show up. Did you request an evidentiary hearing from the court? I requested hearings every single time I filed. Every single time a motion was filed, which there were several, I asked for a hearing. Well, on this issue. Yes, I did. Specifically on this issue. Yes, I did. And did you proffer what you said would be the subject of that hearing? Yes, I did, because it was in our opposition. And what is it that you would demonstrate at a hearing that's factually in dispute? Mr. Noclea says he was represented by a person in a case that occurred before this case that was not a lawyer. Okay? That's called the Hill, I want to say Hill Street, but it's the Hill Collections case. Mr. Abari owned Hill Collections. And he owned a number of other entities. And in that case, this was the issue. It was Hill Collections versus Safeway. Safeway represented by Gordon Reese. The insurance company represented by Gordon Reese. Mr. Noclea represented by Gordon Reese. And what happened, may I get some water? Sure. I don't know why my mouth is dry. In the Hill Street, in the Hill Collections case against Safeway, their client, the only issue was this. They were selling meat in a store that was 50% beef and 50% pork. Okay? And Slater's was one of these franchises. That's the Abari case's Slater's franchises. And they sold, it was Slater's, 50-50 restaurants. Okay? That was all that was tried in that case. They say they went and they met with their lawyer. Not true. It's not true because the lawyer was a guy named Chris Weston. Okay? On all the papers, Reiner said he never was a lawyer. All he was doing was working for Hill Collections, which accepted the case to sue on it. They had separate counsel. But you submitted affidavits with regard to that issue and you presented all that evidence to the court. And the court evaluated it. And not only, I'm not sure that the decision was, we reject everything you say, rather than, well, it doesn't really matter, does it, whether they were the actual lawyers or not the actual lawyers. What matters is whether or not they functioned in that capacity and they provided the information with regard to that representation to you, for you to use in this litigation. You're over time, so could you just answer the question? I would respectfully say you're wrong because, okay, the documents they do say that were given out, first of all, they relate to the Abari case, which is a whole different case. They got $1.7 million from him for a building that could never be used as a restaurant because it had sewage problems that they never disclosed. Okay? So, we sue for him on that. That's a lot different than beef versus, or beef and pork versus Slater's 50-50 restaurant group. Totally different topic. I wasn't even involved when that lawsuit occurred. We were gone. We were not hired yet. We were hired several months after. But a real important thing is this. The documents that they say are, we gave or got somehow, and we disclosed every document we got, gave it to them, we got rid of the client, never talked to Reiner, did all those things you do, all in declarations. Okay, I think we have your argument. But this is really important. On 1-28-20, on that day, Mr. Nauclea writes and he writes to Mr. Reiner and says, Hill Collections is no longer representing us. Because there was an assignment of the claim to the collection company. They say the assignment of claim, this document is the attorney-client contract. They say that. It's an assignment. It's not, nobody says anybody is a lawyer in that document at all. And that's at 3-38. Okay, thank you. But on 1-28, I'm so sorry. I think we have your argument and your time has expired now. Thank you. Thank you for your time. Thank you. All right. Good morning, Your Honors. May it please the Court? I'm Kimberly Howitt for the Appellee's Elite Restaurant Group and Slater's 50-50 Franchise. I'm going to start with the hearing issue. The district court properly issued its ruling without holding a hearing. It's entitled to do so under the Federal Rules of Civil Procedure, Rule 78. It's entitled to do so under the local rules, Rule 7-15. Indeed, district court judges routinely decide motions without a hearing. To require a hearing here would be casting doubt on that process. And the Merch firm did not request an evidentiary hearing in this matter. There was no independent request. There was no notice that live witnesses would be called, such that there was new evidence that would have been brought forth at an evidentiary hearing. And while the Merch firm said in their reply that they wanted to discuss the source of the emails that the appellees pointed out in their reply briefing, the Merch firm had already introduced their own evidence as to the source of those emails. In the declaration of Kevin Merch, they said those emails came from Abhari, their own client. In essence, they used their own client as a conduit to receive the materials from Reiner. We can tell that from the email footer, the yahoo.com footer. And we know that because they are emails that involve only Mr. Reiner, the attorney, and only Mr. Nockley, the elite principal. There is no reason, given this, that the district court should have been required to hold essentially a meaningless or futile evidentiary hearing for the exercise of considering the same evidence that was already before it, and which it relied upon in reaching its decision. The Merch firm had options. They could have requested a CER reply. They could have moved for reconsideration on any new facts. They didn't do so. The court had a full, robust record before it, and it showed that the Merch firm had access to actual information from the prior attorney for elite and for Slater's 50-50. It's well established in California that it is improper for a law firm to access information from a party's prior attorney regarding matters material to a lawsuit in which that law firm is serving as counsel for an adverse party. And because the Merch firm did just that and could not rebut the presumption or the evidence that they did so, the district court properly exercised its discretion and applied this legal and ethical principle. And it further determined that the proper remedy for this was disqualification of the Merch firm from representing the plaintiffs in the Abhari case. Your Honor, you asked about the declarations in this matter and how the court evaluated them. The court looked at a lot of different material. It did look at the declarations of the Merches when they said that they hadn't received anything that they deemed to be material or confidential. But the court found that those were not credible, which it can do under the In re Harpo case. And it found that the declaratory evidence of the Merches was not credible for two particular inaccuracies that the Merch firm had put before the court. First, they represented to the district court that they had never said that Reiner was an abuser. Well, their own letter in the evidence showed that they admitted that they had represented that Mr. Reiner was a lawyer, albeit with licensing problems during the mediation. Recall, they invited Mr. Reiner to the mediation in this case. The second factual inaccuracy that the Merch firm put before the court, which it considered in considering the credibility of their declarations, was that they had ceased communications with Mr. Reiner after the privilege issue was raised. They make the same assertion to this court, and it's not true. And we know that for two bits of evidence. One is the declaration that the district court relied on that was on the Merch firm's own letterhead that they obtained from Mr. Reiner during the actual briefing on the disqualification motion. But there was something else that the district court could have relied upon. That was an October 8, 2020, email from Mr. Reiner's Merch attorneys, conveying information to help them with their opposition to the disqualification motion. That October 8 email came two days after the local rule required pre-motion conference of counsel had commenced. That's evident in, I think it's Exhibit M, in the underlying motion. The court had a robust record in front of it that the Merch firm had collected information and had access to information from Mr. Reiner. And the appellees, believing that they had an attorney-client privilege with Mr. Reiner, of course they paid him a $10,000 retainer fee. They were referred to him as counsel by Mr. Abhari himself. They signed a document which, in substance, which is what Judge Anderson focused on, in fact, based on that privilege, they went ahead and provided him with all sorts of information. Not just that material to the issues that you see in the Hill pleadings, even those overlap with the present issues or the issues in the Abhari case, including elite sales information and the value of the franchise, but information beyond that. And that's described in the Declaration of Michael Naukle, a principle of both elite and Slater's 50-50. He provided elite and Slater's business contracts, information about their business operations and proprietary procedures, information about their assets, sales information, information about the operations and inner workings of the businesses. So Mr. Reiner had this information, which in turn was then material to the Abhari case. We know that on pages 26 to 27 of our publications in the Abhari complaint, which overlapped with Hill and encompassed that information, elite's franchise purchase strategy, the acquisition of the brand, all these things at issue in the Hill case, involved in the materials that the appellees provided to Reiner, they were now at issue in the Abhari matter. So that materiality of the information that Reiner had and what was available to the merge firm is established. The merge firm even admitted this overlap in their letter to counsel saying that they wanted to depose the attorneys in the Hill collections case because they believed they would have knowledge about the value of the franchises. So there's no question about the materiality. There's no question that they had access. Not only was it demonstrated by the communications between the merge firm and Reiner, but also that he sat in on the mediation. And in fact, Mr. Reiner himself admitted in an email correspondence to defense counsel, to myself, that he had consulted with the merge firm as a witness. He repeated this again in a subsequent lawsuit, which we submitted as Exhibit 1 to our request for judicial notice, stating he was a witness. Mr. Reiner, prior counsel for elite and Slater, was going to be a witness in the Abhari lawsuit and consulted with the merge firm in that capacity. This materiality, this exposure to that rebuttable presumption that the merge firm had elite and Slater's 50-50s confidential information. They failed to rebut it. Not only did they fail to rebut the evidence and the presumption that they did so, their own evidence showed that they did. Altogether, the district court's order was well supported by law and by the admissible evidence and by its evaluation of the credibility. There was no abuse of its discretion. It properly decided that disqualification was proper because we were at the early stage of the proceedings. Pleadings were not an issue. No discovery had occurred. Motions to dismiss were pending. There would be no prejudice at that point. But it also based that exercise of discretion focusing on the preservation of the integrity of the judicial process, that a party needs to believe that they're getting a fair shake and that someone's not using a tactical advantage against them by consulting with their prior attorneys. The order's properly affirmed. Do you think the court should go straight to those issues beyond the standing issue? What's your position? On the standing issue, yes. Thank you, Your Honor. I did raise in our briefing that the federal law applies here as to standing. I think the court can find that the merge firm does not have standing and uphold the order there, but I think that there's a robust record to uphold the district court on its ruling on the merits here. Thank you for your argument. Does anyone have questions? I have 44 seconds if there are any other questions. Thank you. The case of Arch Law Firm v. Elias Nakle has submitted.
judges: IKUTA, NGUYEN, Daniels